317-0177 Lakewood Nursing & Rehabilitation Center, LLC Appealed by Holly Turner v. The Illinois Department of Public Health, et al. Good afternoon, Justices. I'd like to spend just a few moments of my initial argument to this Court discussing our request that this Court either strike or not consider portions of the response brief filed by the Illinois Department of Public Health in that it violates the stipulated facts that both parties entered into in this case which are filed. And this, what I'm really telling you, was in fact placed in our reply brief, so this is nothing new. During the first initial go-round of this case, this is our second time in front of the Court, first time having arguments. The first opinion that came down from this Court was one of just the briefs. But prior to that, the Attorney General's Office and myself entered into both a stipulation of facts as well as the specific issues and the wording of those issues. And we went back and forth, and there were multiple changes on both sides, so there would be no argumentative presentation in the issues or the facts. And that was assigned by the Attorney General's Office and myself and filed by the Attorney General's Office and is part of the record on appeal. For that to suddenly change in a response brief for the first time on the second appeal, we believe it to be inappropriate. So the introduction of Medicare was specifically decided and excluded that we were not going to fight that fight at this time because that would have opened up a plethora of discovery and there were other issues that went into why both sides agreed that the Nursing Home Care Act applied in this case. So for the introduction of Medicare law and to open up the Medicare rabbit hole, and if we're going to go down that rabbit hole, I'm prepared to do that. But we don't believe that that was anything, obviously, that the trial court could have considered because it was never raised with him. And it was certainly nothing that was ever argued at any time, and it's argued in direct violation of the agreed statement of facts, law, and issues that we were presenting to both the trial court and this court. Yes, sir. And you've raised it in the response and so forth. If that's a legal issue and legally it applies, how can we ignore that by stipulating it? Two things. One, if it does apply, and I disagree that it does, but let's start with if it does. If it does apply, parties are always free to choose choice of law, and in this particular case, both sides agreed to a choice of law. It's no different than saying I purchased a car in Illinois from an Illinois vendor and I'm an Illinois resident, but our contract says Hawaii law applies. We're allowed to do that. That's a whole different issue, choice of law, whether you apply Hawaiian law or Illinois law. It's a totally different question of whether federal law applies. Okay. And I'll tell you why it doesn't. Or Trump's state law. Got it. That's a whole different issue. Excellent. And I'm going to tell you why it doesn't apply and why my example was somewhat applicable. This isn't federal law. Medicare and Medicaid is a voluntary reimbursement program. Substitute the words Blue Cross and Blue Shield for Medicare and Medicaid. That's what it is. It does not preempt. It is not mandatory. It's a voluntary program. That's what it is. That's what Medicare and Medicaid is. You're not required to take it. You're not required to accept it. You're not required to participate in it. If anyone is going to participate in it, there are separate contracts for which no one has privity among the other. If the state chooses to accept federal funding for Medicare and Medicaid, there's a contract entered into between the Department of Public Health, the state, and Medicare and Medicaid. It has nothing to do with me. It has nothing to do with facilities. It has nothing to do with residents. If residents apply for Medicare and Medicaid, they fill out an application. That's between them and Medicare and Medicaid, just as if I was going to apply for Blue Cross and Blue Shield. The state can't sue on that. I can't sue on that. That's their contract. If I, as a nursing home, accept Medicare and Medicaid, same as Blue Cross and Blue Shield, I am in a relationship with Medicare and Medicaid between the two of us. There are agreed except certain terms of payment, certain remunerations of reimbursement, and other terms between the two of us. There is no private cause of action under Medicare and Medicaid. And this is why this is important. Because residents sue nursing homes under the Nursing Home Care Act because there is no private right of action under Medicare and Medicaid because it's a voluntary reimbursement insurance program. If I don't have to follow the Nursing Home Care Act, yet somehow I have to follow the rules of Medicare and Medicaid, even though those rules have nothing to do with the privity of the department in terms of my relationship with accepting a reduced rate for patients for Medicare and Medicaid, I'm subject to being sued with a collection of attorney's fees, which is why the Nursing Home Care Act is somewhat very, very staunch in the state of Illinois. It's one of the few statutes that allows for the collection of attorney's fees by the resident if they even collect a dollar. We're subject to being sued for private cause of action under a discharge proceeding. And the Nursing Home Care Act, for which I can't even get a discharge case if I'm only allowed to do Medicare and Medicaid. And if there are differences under the Nursing Home Care Act and Medicare and Medicaid, which has been suggested by IDPH, then what happens? I only get a hearing under Medicare and Medicaid, yet I get sued under the Nursing Home Care Act for not giving the Nursing Home Care Act discharge proceeding? It's a rabbit hole. And we're going to go down it, but if we have to go down it, that's the problem that the nursing homes are facing. When it's convenient for the Department of Public Health, it's Medicare. When you get sued, I've got nothing to do with that. That's private cause of action. So the Nursing Home Care Act has to apply because that's the licensing penalty that I face. If I do not follow the Nursing Home Care Act, I am subject to getting my license revoked or penalized. That's the only license. Medicare and Medicaid, they don't license homes. It's a voluntary insurance reimbursement program, Blue Cross Blue Shield. So the Nursing Home Care Act, which is what the Department of Public Health has the statutory right to govern, issue, and oversee, is why this is a Nursing Home Care Act case. And as a matter of fact, the judge that issued the final order in this case put in the final order page this was held under the provisions of the Nursing Home Care Act. Now, if we're going to go down the Medicare wormhole again, the biggest problem the Department of Public Health has and still has to this day is in the event that they contracted with CMS to hold these hearings, CMS, Medicare and Medicaid, Blue Cross Blue Shield, indicated that the state was required to publish a set of guidelines for their hearings. It's never happened. I don't know how to have a hearing under the Medicare and Medicaid guidelines if there are none, and the state hasn't done that. So the state's been holding them under the Nursing Home Care Act. The home, and we did not object in this particular case because we know we're subject to the Nursing Home Care Act lawsuit should we not hold it in accordance with the Nursing Home Care Act. That's definitely a problem for the state because in their brief, although we didn't address it in the reply brief and it wasn't brought up earlier, they indicate to this court, gee, there's a whole lot of differences between what Medicare, Blue Cross Blue Shield requires and what the state requires. I've got to go with the state. I'm licensed by the state. I've got to go with the state mandates. I've got to go with what gives the residents a private cause of action to sue me if I fail to follow those guidelines. And that would include discharge actions, and there are, in fact, several pending in this state. So this is not a made-up science fiction fear that we face. In terms of the cause of action being brought under the Nursing Home Care Act for a wrongful discharge or failing to comply with the Nursing Home Care Act guidelines relating to discharge. So that is why we believe that the Medicare Medicaid, it doesn't preempt. This isn't maritime law. This is not a health law where the government has come in and said similar to the FDA or something, we're preempting. This is national health. We're taking care of it. There is no preemption with Medicare Medicaid. No such provision was cited in the brief that you have from the Department of Public Health. There is no preemption. It's a voluntary insurance program. I can run a nursing home and not have Medicare Medicaid. It doesn't preempt anything, Your Honor. Nor have they set forth any of the guidelines for their contractual relationship to hold the hearing that way or how I'm obligated to do it or how the resident is obligated to do it. So that's why we believe it's akin to a choice of law because we believe that this is not mandated or preempted. And to avoid all of those arguments which would have included in this case additional discovery we didn't take, we both decided to agree to limit it to the Nursing Home Care Act, and that's why that legal decision was made. Now, I understand. I don't believe that they're trying to pull a fast one on this court. I believe that the Attorney General, it's my personal opinion, who handled this case doesn't work there anymore on the first one, and maybe a new attorney came in and didn't understand the background. I'll speculate that that's why they did what they did. But the agreed set of facts which included the issues and the choice of law were done because they were negotiated over a long period of time, including our first appeal. But those were issues I don't think that maybe the Department wanted to go down or deal with or do. Additionally, at the time this occurred, quite frankly, she wasn't a Medicare or Medicaid recipient anyway. She's private pay. So even if this voluntary insurance program somehow preempted state law and took over the state's law, which I don't know how it can do because it's mandated that the state agency do it and do it this way under the Nursing Home Care Act, it wouldn't have applied to this resident anyway because she wasn't Medicare or Medicaid. I hope, Your Honor, I sufficiently answered your question, or at least to what I could do. So in this particular case, the agreed set of facts set forth what we were looking at. And that's another thing as well. What this Court's hearing and what we're not hearing as a nursing home who's subject to strict licensure requirements is, what is the time frame then? If you're telling us, defer to us, trust us, we're the state agency, what is the time frame then? Infinity? Well, it's arbitrary and capricious. And once I'm issued an occupational license as a nursing home, I have a constitutionally protected right to keep that license and to operate my business. So what is the time frame? And when directly asked by the Court, IDPH said, well, you know, it's more than 10 and more than 14, but maybe the legislature should deal with that. Well, they did. They told you when you had to have your time periods. And so to not have the time period applied, which in this case I'm not telling you it should be fast or slow, or the legislature said you shall do it within this period of time. And that was an extremely calculated formula, which I set forth in my brief, how they arrived at 34 days. It wasn't something pulled out of the air. It wasn't end of the month fastest. They know how to use those words. As soon as practicable, they use those words in other places under the Act. But as it relates to discharge and transfers, the state came up with a 34-day formula. I'm speculating because I'm not a legislature, but the argument I'm going to make to you is because that balanced the constitutionality of a state mandating that I feed, clothe, and provide for a resident who is in pain against the cost of doing business. And 34 probably seemed most reasonable. Infinity? There's no way. Two minutes? Oh, better talk faster. So it's our position, Your Honors, that the language, and I'm assuming you read the brief, so I won't reiterate that, but I just wanted to stress that the final order indicates it was the Nursing Home Care Act and that at the end of the day, infinity can't be the answer. And if we're going to defer to IDPH, then defer to what? What's the policy? What is it? I have a statute that tells me what it is. You've given me nothing. It's arbitrary and capricious when I'm going to go, when I might not go, what happens. That's not a fair, expeditious hearing under any statute, much less the one we have in front of us. So we believe that the language of the law should be applied because there is a public interest exception in having the statute followed. And we believe that it's necessary for there to be an onset and an offset in terms of where we got this formula from because, again, you're dealing with the state mandating and not reimbursing facilities for keeping residents for an upteen amount of time. And that's not appropriate. So we are asking that that interpretation. Additionally, we're also asking that this court not, the other argument we hear a lot is, well, you should favor the rights of the resident. This is to protect the resident. What right does the resident have to eat the steak and not pay for it? What right does the resident have to abuse other residents? Remember, this case was all about payment, but that's not the only reason for discharge. Three reasons only. Facility can discharge, nonpayment, not applicable, that the services are, you no longer need nursing services because you get something called a certificate of need. I'm not a holiday inn. You must be approved by the state before I can put you in a nursing home and have a need. So no more need. And third, safety risk. If you mentally decompensate or you're physically aggressive, which happens in a lot of mental decompensation cases, and you run around punching all the other residents, what, do I got to keep you until hopefully nine months comes and I can get a hearing on this? No. Those are the three reasons for discharge. So to say that the resident has a protected right, what's the protected right of the resident to stay in the facility and abuse other residents? There is none. What's the protected right to stay in a facility and not pay? There is none. I'm curious. Yes, sir. What is the relief we're giving in this case? Well, what we're asking for, Your Honor, the relief that we're giving is this is a case of first impression. And, you know, there are no cases, there is no, I apologize, Your Honor, there is no case law on the issue of discharges. There's reasons for that, which we may disagree with, but we believe that they've changed the way they used to do discharges, and that's resulting in these time frames that are coming from nowhere, as opposed to the way they used to do it, which is following the timelines. So what we're asking is for an interpretation, because, you know, there is a public interest in whether or not the state can take as long as it takes to do these discharges, arbitrarily willy-nilly, because they still haven't given an upper limit. They said the legislature should decide, but they did. And so what we're asking for is this Court's interpretation and construction of the statute, because it is a public interest, which this Court recognized in sending it back the first time. The only reason I believe in reading this Court's opinion and why they sent it back for remand as opposed to just issuing the ruling is when it came up in front of this Court. The allegations we made about the deadlines hadn't yet been adjudicated. So that had to go down. Those were then found with the agreed facts, and then came back up. So it's not an advisory opinion? No, sir. I don't believe it is. I believe that we're still subject to these rules and interpretations. It's going on in the state today. There's been no relief granted. These discharges and these deadlines are nothing compared to what we're experiencing now. This was the beginning of what is now happening, and what turned into 30 days is turning in now to 6 months, 9 months, a year. Okay. So in a nutshell, you're asking us, we've already decided even though the case was moved, that the exceptions to the move is not going to be applied. And so what you're asking us to do is decide that move case, and so that law can be applied in future cases. Yes, sir. And case law is such that you have governance over the departments, and if there's an issue and they need guidance as to what it is, and clearly we need guidance because we're obviously worlds apart in where we should be, then that's why we're asking for guidance in the state, Your Honor. And that's why we sent it back the first time. All I can say is the court indicated, you know, if you felt it was binding, you should have said so. I read between the lines in that opinion, and I don't know either judge. I think he was a little upset he got overturned. That's my personal opinion, and there was no placating that issue. But it's a serious enough issue, and there is no case law on it, and we feel like how can we ever get ruled on? If I have to wait for a final order, how do I ever get ruled? Yes, sir. We've already decided that we're going to rule on it. Oh, okay. I'm sorry. For a minute I thought I'm going to go this way and then I'm going to get dismissed. So I think I'm out of time and fairness, but if you have any other questions, I can come back on my rebuttal, Your Honors. Thank you. To address the question of striking or not concerning the statute, of the brief, I am not arguing here that the Nursing Home Care Act doesn't apply. I don't think that the issues are suddenly being changed. I'm not saying the idea is there a private right of action under Medicare, Medicaid, or does Medicaid trump the Nursing Home Care Act? I'm not really making those the issue. The brief cites to federal regulations in the context of fully informing the court of what is a complex area of the law where there are state law and federal law that also apply. The ALJ's decision in this case, in its conclusions of law, cites to the federal regulations, so it's making a determination under federal law. But as I explained in the brief, that the procedural structure comes from the Nursing Home Care Act and the substantive reasons for discharge are similar under federal law and state law. So the significance of federal law is largely an interpretive tool. There's a question raised here about what should be the appropriate construction of Section 3411 of the Nursing Home Care Act, those timeframes of a mandatory or directory. I think the references to federal law provide a full context of the framework that applies overall and also provides evidence of legislative intent. Because one aspect of legislative intent is that the legislature... then you're in a very different ballgame. When you accept those programs, there are set standards and the facility aspect of those programs. Yes, but the Nursing Home Care Act also does fit in there, in that framework. Can I ask that? Look, we've been getting all metaphysical here for the last 20 minutes. You correct me if I'm wrong, because I understand the issue before us. We previously decided that we're going to decide this move pace that came up before us. And as I understand it, there's two issues before us. One of them is, is that time period mandatory or directory or suggestive or whatever? And the second thing is, does the department have the right... are they empowered to order the nursing home to keep somebody beyond 10 days? Correct. That is correct. So that's one of the issues we're here to talk about. Those are the issues we're here to talk about. The objection that was raised go to a couple of ancillary issues that I've also raised. We think that those are legal issues that are appropriate for the court's consideration. And it is not saying that the Nursing Home Care Act doesn't apply or anything like that. But to turn to... But only as those things as federal or whatever else might affect those two issues. Correct. That is essentially what I'm getting at by adding... by the fuller discussion and including references to federal law. I've also raised an ancillary question about whether the 311 time frames come into play in this case. But that's an ancillary question. Let's say we're in the time frames of 311 and the question is, are they mandatory or directory? And counsel has said, well, does that mean there's no time frame? Can the time frame be infinity? And that's not what a mandatory directory question is looking at. A mandatory interpretation means... The Illinois Supreme Court has given us a framework for this and there are recent cases on this. So a mandatory directory construction... Excuse me. A mandatory construction means that outside of a statutory time frame, an agency's ability to act is just cut off for whatever reason. Just cut off outside that time frame. So if we have 11 days instead of 10 days for the hearing, a mandatory construction would mean the agency can't act. And that is not... We feel that that cannot be what the legislature intended here. The legislature could not have intended to cut off the rights of residents not to be subject to improper removal without a fair hearing for reasons that are outside of their control. Well, let's talk about, just for a second, the rights of residents because there's rights of residents involved here other than the resident who's being sought to be discharged because if that resident's staying there and not paying, it costs money to run a nursing home, right? So who's going to pay for that? Not the state, the paying residents. And so what about their right not to pay for, you know, that this stuff happened in a timely fashion because their rights are being affected as well. Of course. And they raise that issue about, well, this can have an effect on cost, but I think it's important to keep in mind that there are a lot of factors that will ultimately affect the cost of nursing home care. When we're looking at it, this is a question of legislative intent. I don't believe it's the case that the legislature intended to very directly penalize residents by cutting off their rights to a hearing and saying they can be improperly removed based on attenuated possibilities of additional costs down the road. So we get back to this question of legislative intent and there are a lot of factors that demonstrate that the legislature intended a directory construction here, and those are all addressed in the briefs. But in large measure, I think it comes down to it just turns the CARE Act on its head to conclude that the legislature intended to cut off this right of residents to a hearing. Do you think maybe the legislature intended that the department would do their job and ultimately that they just assumed that these bureaucrats would do their job and hold these hearings in a timely fashion so people's rights could be determined in a timely fashion? Of course, the department does hold the hearings as expeditiously as they can, consistent with their obligation to make sure that the resident is able to meaningfully proceed. The resident has a right to an attorney. That can take some time. The resident might be ill. So they have to make sure that the resident can participate. They have to assess what the case is about. Additionally, they have other statutory obligations that the legislature has imposed on these types of hearings as well. There's a whole framework of steps that occur in a hearing and that's not just for other hearings.  Those are going to take some time. So we're dealing with a very tight time frame that the legislature has applied here of just 10 days for the hearing, 14 days for the decision. With all of what you just said, what do you suppose the legislature intended? Why would they put a 10-day period on it? Well, time periods are usually construed, and should be in this case, as intended to move the proceedings along. And that is what is going on here. The mandatory directory question looks at... We're not saying that the legislature suggested 10 days. That's what the statute says. 10 days, 14 days. But the mandatory directory question is, what happens when that does not happen? Did the legislature intend to stop all action, cut off the rights of residents to have a hearing? And we don't believe that that is what the legislature intended in that case. Well, they said no later than 10 days. They didn't say close to 10 days or 10 days. They said no later than. That certainly sounds like they intended to cut it off. And they also say in that same sentence, within 14 days for the decision time, and reading those together because they're in the same sentence, I would say that the legislature did not intend to attribute any... in being no later than with any special significance. Well, would sections provide a remedy for the nursing home who is not getting paid during the period of time that the decision has not been made? If the nursing home were going to... There might be some potential. But what they put forth here is a mandatory directory question. And that's all they put forth here. So if there was some case where someone wanted to make an argument about the delay in a particular case and make claims based on that in a case-specific context that had to do with whatever happened in that case, then they have it done. Then that's kind of what we've got here. Because we're deciding... And you, as well, talk about legislative intent. Your argument's been quite a bit framed upon legislative intent. And some people in the legislature are business owners and know what happens to business owners when they don't get paid. Their employees lose their job or they have to raise the cost on paying customers. So is there any reason not to assume that they took those considerations into account when setting these guidelines? Even if they took those considerations into account, I don't believe that the legislature intended those considerations to take precedence over the right of residents to not be subject to involuntary removal without a fair hearing. Because the Nursing Home Care Act, first and foremost, all the case laws that accord on this, is geared toward the protection of residents. There are other indicia that the legislature intended this section to have a directory construction, as well. The rights of residents is a very big part of that. So... And do you think they intended to put the rights of non-paying residents over the rights of paying residents? Council's assuming there that these are residents who are contesting the involuntary removal. Council's kind of making the assumption that the facility wins, but the hearing hasn't been held. I don't agree. But is there a constitutional right for the person to be in any particular nursing home? I don't know, Your Honor. I don't believe there's a constitutional right to that. So to the extent there's a right, it's some kind of statutory right. I'm not sure about the answer to that question. You know, the reason I was asking the question is there's a growing population of elderly people in this country. So we have these nursing homes. And the nursing home populations are increasing, right? For the 18th population in America. So we have more of this. We have more people on Medicaid. We have more people on Medicare. And then we have nursing homes that either accept or don't accept people on Medicare and Medicaid. And here we have examples of people at a nursing home that did not accept Medicare and Medicaid, I guess, residents. So we have paying people numbers of time where they're not paying. And so we have these discharge proceedings, correct? Yes. It's not a statutory date. It's a statutory period's work. We have deadlines. And so then we have a period like in this case where what happens when the deadlines aren't met and there's not a pay period. And so my question is, well, what happens when you don't pay? What's the other side of the coin? The other side of the coin, and the Illinois Supreme Court has discussed this. A directory construction does not necessarily mean that there are no consequences in any situation and the department can just do what it wants in all circumstances. That doesn't necessarily follow. There might be instances, but that would be a case-specific thing. If someone wanted to bring an action based on delay or whatever, I don't know what causes of action might be proper or possible, but that's different. The mandatory directory question. My point is, isn't that something that when we're making a ruling, isn't that something that's part of the decision process? I would say it's not here because what you're being asked to decide is a mandatory directory question. The mandatory directory question is one thing only. The only question is, did the legislature intend that if the time frames are not strictly complied with, then the department's ability to act is cut off for that reason and that reason alone in every case, regardless of the reason why the time frames weren't met. That's all you're being asked to decide, not about potential cases and other causes of action that could have happened but didn't happen. When we look to the whole statutory scheme, I'll briefly mention some of the other factors that warrant a directory construction. There's section 3, 4, 13 of the Act, which contemplates both that there's going to be a decision from the department before the facility can discharge the resident. So we need to have that in place. And it contemplates that it might take longer than 10 days. We have a situation that presented to us, there's a given that this person has not paid. They write a person's not paid. That's a given in this statute. The person requested a hearing and then it was determined in that case. In this case? Yes, that they owed money to the facility. There's been no payment. That's a given in this case, correct? Yes, there's money owed to the facility. The facility... Has not been paid. They retained a right of action against the resident for non-payment and they did exercise it in that case. So with respect to the facility's interests, my point is that I don't believe that the legislature intended that they would trump the rights of the residents to have a hearing. I'm not saying it's trumped. In interest of my question, what right are you talking about? It's statutory right not to be subject to involuntary removal without a fair hearing. Well, and so really... Now, we're going to need to construe this statute. So let's hypothetically speak, I don't know how this case is going to go. There's three of us here. But if it doesn't go your way, and you think you don't like this interpretation, the Supreme Court may assume it doesn't disagree, or you can go to the legislature and say, folks, that's just not enough time. We need to amend that statute to give us more time. But if it's just directory, then you're saying there's no time limit at all. I'm saying something more specific than that. I'm not saying there's no time limit at all. I'm saying that directory reading does one thing only. A directory reading says action outside that time frame is not cut off for that reason alone. I'm not saying that there might not be other situations where someone could complain of a delay and try to bring some type of cause of action, but that's different from a mandatory directory question. Well, would you feel that there are competing interests and rights in this case? I feel that the Nursing Home Care Act, that it's really its whole intent and purpose is geared toward the protection of residents and not really the facilities, to the extent that the facility's interests are a legislative concern, I don't believe that we can conclude that the legislature intended them to take precedence over the residents' rights not to be improperly removed without a hearing. I think that turns the Care Act on its head. Well, let me suggest to you that if a facility isn't getting paid by enough patients and they go out of business, how is that because I'm not staying in this business, I'm losing money, I'm not making any money, I'm working. How does that protect patients? All of those are speculations that are not... That's not speculation. With all due respect, people that work for the government all their life don't understand what happens to people in the private sector that run businesses. And some of these people in the legislature, I suspect, have been in the private sector. Is it unreasonable to think that these time limits show some regard for the necessity because if they're not getting paid, people go to business for profit? That's not an evil notion. No, I think the time limits are there for a reason and they meant that the legislature wanted these expeditiously moved along. But the mandatory directory question is what happens if there is action outside those time frames and that's where I would say the legislature did not intend to cut off the residents' rights to a hearing. What is your authority for requiring the nursing home to keep her an additional 30 days? The authority for that is in section 3413, which talks about leave taking and the circumstances that surround leave taking. It addresses the department's role in that process because you need a discharge order from the department. And it talks about how the resident cannot be required to leave before at least 10 days after the department's decision. But it's not capping it. So we believe both that that section contemplates a role for the department and by saying at least 10 days, allows more than 10 days in an appropriate circumstance. I think that section is bolstered by section 3418, which talks about the department's authority in discharge situations to make plans that promote a resident's health and safety and welfare. In this case, the resident was 97 years old. The ALJ concluded that additional time would be required for an orderly transition and we think the department has the statutory authority to do that. I was going to say, would you agree the department has no authority other than that granted by statute? Yes. So to wrap it up, there are a lot of factors that go into why a direct reconstruction is warranted. They are gone over in detail in the briefs. I know there is a case from this court that construed a different provision as mandatory. I think there are differences there. There's a more recent Illinois Supreme Court framework. There's a different provision, different statutory language. And ultimately there in that case, the department is being penalized for not acting within time frames. Here the residents are being penalized. And cutting off their right to a hearing, contrary to what counsel has suggested, harms the residents. It does not benefit them. Thank you. Thank you, counsel. Counsel? A few things I'd like to address very briefly. First of all, we keep talking, or the word speculative must have come up seven times. We're not speculating. We have an agreed set of facts to make this really easy. The agreed set of facts that the Attorney General's Office 90 PH signed indicate the resident didn't pay. The resident admitted they didn't pay. There's no speculation on the facts that we have in this case. Melody, the resident not pay, but did the resident transfer her real estate to her daughter? What really happens in the underlying ugly story in a lot of this is this is what they now call today's estate planning. Don't pay. Because by the time the resident can get a hearing in front of IDPH, they'll die. You don't have to pay the bill. Or in the interim, all the assets get transferred to the heirs, free of existence, and then you stiff them with the bill. And when you don't pay, there's nothing to collect because the estate doesn't have any assets. It's great. It's called estate planning in Illinois now, unfortunately. And it didn't used to be, which is why there's no case law on this issue. They used to follow the timelines. Now they don't. And another point I want to make is this court asked, and rightfully so, what about the facility? And who, in essence, by the state not acting within the mandates of the legislature, and the language was clear, not suggestive, in not acting within those time periods, the state is requiring a private body to pay and to assume that burden. And what right do they have? I'll tell you. A zero. Because under the Nursing Home Care Act, in an administrative proceeding, if they fail to act, no right of mandamus is available to a facility. We would have started there. The case law is clear. There is no right of mandamus. I cannot march into court and ask them, please make them hurry up and follow the statute. I have to wait until there's a final order. I finally get a final order, and what happens? They stand up here and say, Moot, judge, you can't hear this. It's moot now. Sorry. And now I'm back to moot. So there is no private cause of action available to us, and they know it. They, being the state, know it because every time they're in front of you, they make the argument that it's moot, you shouldn't hear it, there's all these reasons why you can't get in front of a judge for this issue. So, and I apologize I'm animated, it's just, you know, this is definitely a pressing issue, and there's no potential here. There's actual. We know what happens in this case. We know in this case. That's why we had to wait to bring this case with these facts. And despite begging and pleading and otherwise, you know, shaking the saber on trying to get a hearing, when they fail to comply, how's that protecting a resident? And again, payment's not the only reason. Payment and discharge is allowable. The other reason is it's not a suitable placement for you. What right is served by making you stay there? How about the residents who are running around abusing other residents? That's the physical safety of yourself or others. What right is served when you can't get a hearing? And so those are concerns, and I know that we discussed this directory issue, and you've read the briefs, I know, so I'm not going to reiterate it too much, except the only piece of their argument I do agree with is the Robinson case that IDPH cites too many times. That court was pretty clear. We do not understand the state to argue that legislative intent merely to grant the clerk permission to offer or effect service within ten days, if the clerk chooses to do so, or that the legislature only meant to suggest it. It might be a good idea if the clerk did it within ten days. In short, there was no dispute that shall mean shall. And in this particular case, that's what it meant. And if we're going to sit here and talk about legislative intent, we quite frankly only look at legislative intent if it's ambiguous or it's unclear. I'm not certain what's unclear about 10 or 14. Not as soon as possible. The statute uses those deadlines. The statute many times says expeditiously, as soon as possible, or doesn't have a time period, but not for this. Of course, counsel's argument is that it's, but it doesn't say what happens if, you know, if either the mandatory versus direct. And I'll explain that a little bit. That only comes up normally in normal situations between the state and the facility. And by that, what I mean is if they issue me a violation, because there's actually a case law on this, funny enough, that they want to cite me, there's a deadline, you know. But if the Department of Public Health and I have an action, meaning I commit a violation, they cite me. And my occupational license is at issue because they're issuing me a violation. In those types of situations, that's usually where mandatory and directory come up. Because you have the two people involved in the case whose rights are being looked at. This is an interesting granule of a piece of statute because it's directly impacting the rights of both the general public in the state not acting within the time period, as well as the rights of the third party who's present and who is a party to this action. And by the state not acting, I think it's very inappropriate, for lack of a better word, for the legislature to say, this is what we want you to do and we're clear in that. We don't have to look too far to determine the intent. 10-14, and those aren't random dates. You add them up, they come to 34. That's an odd number. Not a month, but 34, because the legislature made a determination. Why? Because truthfully, if they had said, take as long as you want, wouldn't the nursing home industry turn around and file the lawsuit on the unconstitutionality of that statute so fast we wouldn't be here having this argument today? I'm sorry, 10-14 is 24. Oh, because there's another 10, Your Honor. It's the entire 34-day structure is set forth in the Nursing Home Care Act. So those 10 days and those 14 days, when you add up the other days, give you 34, which is the exact time period set forth. So there's 10 days under Section 410 to request a hearing, 10 days under 411 to hold the hearing, 4 days under 411 to issue a final order, and 10 days to leave the facility under 413. When you add all those up, you reach the figure 34 days. Why is that interesting? Because surprisingly, under Section 413, the Nursing Home Care Act states that a resident shall not be required to leave the facility before the 34th day following receipt of the notice. Where do we get 34 from? From all the calculations, and it's in the brief, Your Honor, added up gives you 34. That means that the legislature specifically intended the number of days it wanted each of these sections to be. And totaled 34 to be the outset of the maximum period of time that you should have to maintain a resident at your cost. And it also applied it fairly. If someone got a hearing date sooner, then the 34 days still applied. So everyone was treated equally among the system, and nursing home businesses and residents and everyone else knew the time period. Could you take just a minute and explain exactly what kind of facility this is? This is not a retirement home. No, ma'am. And I should probably explain that. There are various homes in the state of Illinois. There are certain homes called assisted living, where you don't need skilled care. There are certain homes that are just retirement homes, and they're not licensed by the state at all. And then there are certain homes called nursing homes. And nursing homes are licensed specifically for a set number of beds by the state. You must have a certificate of need. The state must tell you there's a number of this many beds that are necessary in this geographic area. So once they determine that you're entitled to a certificate of need, you get licensed by the state and you can have a facility. You can't accept a resident unless the state says that they have a need, which is why one of the reasons for discharge is their need may change. And then at that point you're not allowed to keep them anymore under the Nursing Home Care Act, which is why you have to discharge under the Nursing Home Care Act because I'm subject to that act. So in this particular case, you can have various illnesses that can necessitate nursing, some short-term rehab. You might just be there for a broken arm or a broken leg. What about Alzheimer's and dementia? Yes, you can have Alzheimer's and dementia units. Those are usually more locked units. That was not the case in this situation. She was alert and oriented and was able to participate in her hearing, as the court saw, active and all the other things that the transcript indicated. So this was not a case of a dementia patient or anything else. In terms of any of these arguments that the state needs more time, all we can say is that's not a reason to second-guess what the legislature said. This act, in fact, was amended. The Nursing Home Care Act was amended in 2014. At that time, the Illinois Long-Term Care Council was present. The Illinois Department of Public Health was present. The Ombudsman's Office was present, and there were a few other individuals from the community that were selected to meet on this committee to draft the amendments to the Nursing Home Care Act to see if they could reach a public consensus for presentation to the legislature. Would it be fair to analogize cases from Medicare and Medicaid? As suggested by the Ombudsman. Well, she didn't cite any actual cases from Medicare and Medicaid. She didn't cite any federal cases in her brief. The original argument, which is why I'm a little confused, was you shouldn't apply it at all, yet she didn't actually give you another test to apply. But then the argument became, now you should look at this. There's no federal case that says that residents should stay in the facility for as long as they want and the facility should have to pay for it. There's no such thing that's ever been issued that I'm aware of under any federal law. The only citations that counsel cited to in the brief that I saw were particular sections, which, quite frankly, if we're going to go down the Medicaid hole, aren't even applicable because Medicaid necessitates that the state publish guidelines and produce them to people for the timelines. And these are the only ones that they have, which is the Act. So I apologize if I didn't answer your question. So I definitely hope that this Court reads this and understands that these questions aren't necessarily new. There's nothing here that's speculative. We know the set of facts. And there has to be a right because you have to govern, in my opinion, I think the occupational business license right. And would a directory reading render that provision unconstitutional on its face because then it's arbitrary and capricious as it affects the direct economic right that you've already issued to a facility. So thank you, Your Honors. Thank you. We're going to take this case under advisement.